UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD RASMUSSEN JR.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JUSTIN HOBBS and JANE DOE HOBBS, husband and wife, and their marital community,<br><br>　　　　　　Defendants. | NO: 12-CV-0555-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Defendants' Motion for Summary Judgment (ECF No. 9) and Defendants' Motion to Strike (ECF No. 25). These matters were heard with oral argument on March 20, 2013. Stephen Ross Matthews appeared on behalf of the Plaintiff. George Fearing and Andrea Claire appeared on behalf of Defendants. The Court has reviewed the relevant pleadings and supporting materials, had the benefit of oral argument, and is fully informed.

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff Donald Rasmussen Jr. ("Rasmussen") claims Defendant Justin Hobbs ("Hobbs") is liable under 42 U.S.C. §1983 for constitutional violations including judicial deception and unlawful arrest. Rasmussen claims that Hobbs knowingly filed a materially false affidavit with the Spokane County District Court in order to establish probable cause. Presently before the Court is Defendants' motion for summary judgment.

FACTS

Rasmussen resides with Lisa Jacobsen ("Jacobsen") who he "guess[es] you could say" is his "significant other," although they "keep [their] affairs separate." Rasmussen Dep., ECF No. 13 at 5. They have a "romantic relationship" and have lived together on and off since 1996. *Id*. Rasmussen and Jacobsen were living together in 2010. *Id*. at 6. Brittany Jacobsen ("Brittany"), now an adult, is Jacobsen's biological daughter. Rasmussen has no biological children. *Id*. at 7-8. Brittany likely lived in Rasmussen's home a majority of the time since she was five years old, although she was not living with Rasmussen at the time of the incident in question, and Rasmussen testified that he allowed others to assume that he was Brittany's father. *Id*. at 12-14.

On May 30, 2010, Jacobsen and Rasmussen went to Brittany's residence, which Jacobsen owned, to discuss Brittany's boyfriend. Jacobsen told Brittany

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

that the boyfriend could not stay in the home when he had warrants. *Id*. at 20-21. Rasmussen recalls that during the discussion Brittany became enraged, kept charging at and physically pushing Jacobsen, and calling her mother obscene names including "bitch," "cunt," and "whore." *Id*. at 22-24. According to Rasmussen, he reached over Jacobsen's head and pushed Brittany away from her mother, at which point she fell on her bum and "bumped her face on the countertop" on the way down. *Id*. at 24-25. Rasmussen testified that his right hand, but not his fist, made contact with Brittany's right-hand jaw. *Id*.

At approximately 9:00 p.m. on May 30, 2010, the Cheney Police dispatcher asked Officer Hobbs to come to the lobby of the police station to speak with Brittany. Hobbs Decl., ECF No. 14 at ¶ 3. Dispatch conveyed to Hobbs that Brittany reported her "father" struck her with his fist and knocked her out. According to Hobbs, because of the word "father," Hobbs proceeded to investigate Brittany's allegations as a potential domestic violence crime. *Id*. Hobbs met with Brittany in the lobby of the police headquarters. Brittany allegedly informed Hobbs that her parents, Donald and Lisa Rasmussen, visited her at her home earlier that evening and complained about her current boyfriend. *Id*. at ¶ 4. Hobbs recalls Brittany stating that she and her mother argued, with her dad standing to her right, and that after she called her mother foul names, her father Donald punched her in her right jaw. Officer Hobbs concluded that Rasmussen likely assaulted Brittany

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

because of where Rasmussen was allegedly standing before the punch, and the location of the bruise on Brittany's cheek.

Upon further questioning by Hobbs, Brittany reported that Rasmussen was not her biological father. *Id*. at ¶ 7. According to Hobbs, Brittany claimed Rasmussen and her mother were married and that she lived in their household since she was a baby. Brittany disputes that she made this statement, and asserts she knew Rasmussen and her mother were not married and that they did not share a household when she was a baby. Decl. B. Jacobsen, ECF No. 22 at ¶ 2. After interviewing Brittany, Hobbs believed he had probable cause to arrest Rasmussen for domestic assault, however, he asserts that he traveled to Rasmussen's home with the intention to hear his side of the story. ECF No. 14 at ¶ 57.

The parties heavily dispute the nature of the contact between Hobbs and Rasmussen. Rasmussen claims Hobbs was agitated and aggressive when he approached Rasmussen, and that Hobbs immediately arrested him, with no further questioning, after confirming his identity. ECF No. 20 at ¶ 6. According to Hobbs, Rasmussen confirmed an argument between Brittany and Jacobsen. Hobbs also maintains that when he told Rasmussen about Brittany's report that he punched her, Rasmussen responded "there are certain things you just don't say to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

your mother"[1] and told Hobbs that he could reach his own conclusion. Hobbs further contends that he asked Rasmussen if he was Brittany's father and that Rasmussen confirmed that he was not her biological father but she lived in his house since she was a baby. ECF No. 14 at ¶ 10. Hobbs asked Rasmussen if he hit Brittany, and Rasmussen replied that he would not comment further. Again, Rasmussen denies that he made any of these statements, and disputes that Hobbs asked him if he was married to Jacobsen or if he was Brittany's father. ECF No. 20 at ¶ 6. Rasmussen did not tell Hobbs that Brittany was not his daughter.

Hobbs arrested Rasmussen for the assault on Brittany and concluded the assault should be classified as domestic violence based on his understanding that Rasmussen was the stepfather of Brittany. ECF No. 14 at ¶ 14. Hobbs concluded that Rasmussen and Jacobsen were married based on Brittany's statements and the fact that Rasmussen wore a wedding ring.[2] *Id*. at ¶ 15. Hobbs transported Rasmussen to the Spokane County jail, and completed a citation charging Rasmussen with violating RCW 9A.36.041, assault in the fourth degree, domestic

---

[1] In his deposition, Rasmussen confirms that this statement was made but recalls it was made by Jacobsen. ECF No. 13 at 31-32.

[2] Rasmussen testified that he wore a ring on his wedding ring finger, but claims it was not a wedding ring, and not worn because of his relationship with Jacobsen. ECF No. 23 at 7-8.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

violence. *Id*. at ¶ 16.  After the arrest Hobbs prepared a "Statement of Arresting Officer and Preliminary Finding of Probable Cause" which included the statement "Brittany stated to this officer and can testify that her father, Donald Rasmussen …, was at her residence and they became involved in a heated verbal argument over the boyfriend that she is currently seeing."  ECF No. 14 at 16.  Rasmussen was arrested on Saturday of the Memorial Day weekend, and held without bond allegedly due to the charge of domestic violence.  ECF No. 20 at ¶ 9.  He was held in jail on Saturday night, Sunday, Monday, and Tuesday.  Prior to this incident, Rasmussen had never been arrested or charged with a crime.  While in jail, he was strip searched, held in a "filthy" cell with a man who had open wounds and displayed odd and disturbing behavior.  As a result of being held in jail, Rasmussen claims his blood pressure skyrocketed, he lost time at work, and he continues to be emotionally upset by the experience.[3]  *Id*. at ¶ 11.

---

[3] Hobbs offers additional facts acquired after the lawsuit was filed indicating that Lisa was, at various times, identified in police reports as Lisa Rasmussen-Jacobsen or Lisa Rasmussen.  ECF No. 12 at ¶¶ 82-88.  Rasmussen contends these facts are based on hearsay evidence and asks the court to strike the evidence.  ECF No. 19 at 5.  The Court declines to consider evidence acquired after this lawsuit was filed. *See Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995)("Probable cause must be determined at the time the arrest is made.").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

DISCUSSION

**I.    Motion to Strike (ECF No. 25)**

In support of his response to Defendants' motion for summary judgment, Rasmussen filed a declaration by Donald Brockett, elected Prosecuting Attorney of Spokane County until his retirement in 1994. Brockett opines that if the affidavit of probable cause was filed without the statement that Rasmussen was Brittany's "father," there would have been no factual basis for the domestic violence charge, and it would have been possible for Rasmussen to post a $500 bond and be released. ECF No. 21 at ¶ 7. Hobbs asks that the declaration be stricken, as Brockett was not listed as a witness in Rasmussen's initial disclosures, the declaration is not based on personal knowledge, and it contains legal conclusions and speculation. ECF No. 25. Rasmussen replies that Brockett's testimony was secured only in response to the summary judgment motion. However, Rasmussen utilizes most of his response to the motion to strike to argue that the supplemental declaration of Justin Hobbs improperly raises new facts, including, that he considers a step-father to be a father. ECF No. 32.

First, the Court denies the motion to strike as essentially moot, because the Court does not rely on this declaration for the substance of its ruling on summary judgment. Rather, the Court relies entirely on undisputed facts and deposition testimony from the relevant parties. Second, as to Rasmussen's objections to the

reply materials submitted by Hobbs, specifically that his deposition testimony conflicts with his second declaration, the Court notes that in his deposition Hobbs answered "No" to the question "[i]n your mind, is there a difference between a father and a stepfather?" ECF No. 23 at 14. Thus, the Court finds no evidence that the second declaration submitted by Hobbs was an effort to contradict previous testimony, and declines to "disregard" the allegedly improper reply arguments, as requested by Rasmussen.

## II. Motion for Summary Judgment (ECF No. 9)

### A. Standard of Review

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.  § 1983 Claim**

A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against any person acting under the color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Southern Cal. Gas Co., v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) (citing 42 U.S.C. § 1983). The rights guaranteed by § 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991).

**1.  Judicial Deception**

For a Fourth Amendment judicial deception claim to survive summary judgment, a plaintiff must (1) make a "substantial showing" of deliberate falsehood or reckless disregard for the truth and (2) establish that, but for the dishonesty, the challenged action would not have occurred." *Liston v. County of Riverside*, 120

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

F.3d 965, 973 (9th Cir. 1997). If both requirements are satisfied by plaintiff, the matter should go to trial. *Id.* "Materiality is for the court, state of mind is for the jury." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002)(*citing Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)). Rasmussen claims that Hobbs' allegedly false statement in the affidavit that Rasmussen was Brittany's "father" was the only evidence in the affidavit to establish the requisite parental relationship between Brittany and Jacobsen necessary to charge a domestic violence offense. Because the charge was a domestic violence offense, a local court rule was triggered that prevented Rasmussen from posting bond, and resulted in his protracted detention in jail over the long Memorial Day weekend.

a. <u>Deliberate Falsehood or Reckless Disregard for the Truth</u>

First, Rasmussen must make a "substantial showing" that Hobbs acted with deliberate falsehood or reckless disregard for the truth in preparing the affidavit. *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)("[c]lear proof of deliberat[ion] or reckless[ness]" is not required at the summary judgment stage). If a plaintiff makes the requisite "substantial showing," then the question of intent or recklessness is a factual question to be decided by the trier of fact. *Liston*, 120 F.3d at 974. However, "[o[missions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

2009)(noting judicial deception claim cannot be based on an officer's erroneous assumptions about the evidence he has received).

After Hobbs arrested Rasmussen, he filed a "Statement of Arresting Officer and Preliminary Finding of Probable Cause" including the statement: "Brittany stated to this officer and can testify that her father, Donald Rasmussen …, was at her residence and they became involved in a heated verbal argument over the boyfriend that she is currently seeing." ECF No. 14 at 16. Rasmussen argues that according to Hobbs' own report and deposition testimony, he knew that Rasmussen was not Brittany's biological "father," and because of this false information intentionally provided to the court, Rasmussen was held in jail without bond over the holiday weekend on the domestic violence charge. *See* ECF No. 14 at 12-14. In his deposition, Hobbs agreed that by using the word "father" he was "giving the judge the impression that [Rasmussen] was [Brittany's] biological father." ECF No. 23 at 13-14. However, while Hobbs concedes that it may have been more accurate to refer to Rasmussen as a "step-father" instead of "father," he maintains that he did not intend to mislead anyone, as he considers a stepfather to be a father. ECF No. 23 at 14; ECF No. 27 at ¶¶ 25, 28. Moreover, according to Hobbs, Brittany repeatedly referred to Rasmussen as her "father" during his interview, and based on the entire story Brittany reported to Hobbs, he concluded that the two treated each other as father and daughter. *Id.* at ¶¶ 24-25. Hobbs also

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

contends that Rasmussen knew he was being arrested for domestic violence assault, but never stated that he was not the stepfather of Brittany or the husband of Jacobsen.

Rasmussen relies on *Chism* to argue that Hobbs' admission that he knew Rasmussen was not Brittany's biological father, is sufficient to make a "substantial showing" that Hobbs acted with deliberate falsehood or reckless disregard for the truth when he used the word "father" in the affidavit. *See Chism v. Washington State*, 661 F.3d 380, 387-88 (9th Cir. 2011). In *Chism*, the court found evidence that omissions and false statements contained in the affidavit were all within the affiant's personal knowledge, and "[a] reasonable factfinder could also find that the officers acted recklessly or intentionally because the false statements and omissions contained in the affidavit all *bolster* the case for probable cause, which suggests that the mistakes were not the product of mere negligence." *Id*. at 388 (emphasis in original). The Court finds this case is distinguishable from *Chism*. Here, Hobbs relied on repeated references by Brittany during their interview at the police station to Rasmussen as her "father." According to the exact text of Hobbs' affidavit, "Brittany stated to this officer and can testify that her father Donald Rasmussen, …" ECF No. 14 at 16. Importantly, while Brittany disputes that she said Rasmussen and her mother are married or that she lived in their household

since she was a baby, she does not deny repeatedly referring to Rasmussen as her "father" during her interview with Hobbs. See ECF No. 22.

Moreover, while Hobbs' genuine belief that a "father" is inclusive of "stepfathers" is perhaps a negligent assumption, the Court finds that characterizing Rasmussen as a "father" instead of "stepfather" in the affidavit does not rise to the level of deliberate falsehood or reckless disregard for the truth. Unlike *Chism*, using the word "father" instead of "stepfather" does not effectively bolster the case for probable cause, as stepfathers are included in the definition of "family or household member" under the domestic violence statute. *See* Wash. Rev. Code § 10.99.020(3); *see also Chism*, 661 F.3d at 388. As discussed below, undisputed evidence of Brittany's repeated references to Rasmussen as her "father," combined with the fact that Rasmussen was present at the altercation with Brittany ostensibly to protect Jacobsen, and the fact that Rasmussen wore a ring on his ring finger, were sufficient for Hobbs to reasonably deduce that Rasmussen acted as Brittany's stepfather even if he was admittedly not her biological father. The Court finds that Rasmussen does not uphold his burden on summary judgment to make a "substantial showing" that Hobbs acted with deliberate falsehood or reckless disregard for the truth in submitting his affidavit.

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

b. Materiality

The second element in a judicial deception claim, to be decided by the Court, is the materiality of the allegedly false statements or omissions. *See Butler*, 281 F.3d at 1024. "A defendant challenging an affidavit must also show that the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause." *Stanert*, 762 F.2d at 782. To find a domestic violence offense, there must be evidence of a statutorily established relationship between the accused and the alleged victim of "family or household members," which includes persons who have a legal parent-child relationship "including stepparents and stepchildren." Wash. Rev. Code § 10.99.020(3). Hobbs' affidavit stated that Rasmussen was Brittany's "father" in order to establish probable cause on the domestic violence offense, and it is undisputed that the affidavit did not include any other evidence about the relationship between Rasmussen and Brittany. Rasmussen argues that when the allegedly false statement is purged from the affidavit there is not probable cause to support a domestic violence charge, and "but for" the misrepresentation that Rasmussen was Brittany's father, Rasmussen would have been eligible to post bond for Fourth Degree Assault.

Hobbs responds that had he identified Rasmussen as Brittany's stepfather, instead of father, and set forth the omitted background for his conclusion that

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

Rasmussen was Brittany's father, his affidavit would be sufficient to support a finding of probable cause. The Court agrees. As an initial matter, the Court once again finds no evidence in Brittany's declaration or in any other portion of the record disputing that Brittany reported to Hobbs that her "father" assaulted her, nor does she deny that she referred to Rasmussen repeatedly as her father. However, if Hobbs were to replace the allegedly dishonest "father" with "stepfather" and supplement the omitted information, including: Brittany's repeated references to Rasmussen as her father, Rasmussen's presence at the altercation with Brittany ostensibly to protect Jacobsen, and the fact that Rasmussen wore a ring on his ring finger; the Court finds the affidavit would be sufficient to support a finding of probable cause that Brittany and Rasmussen had the requisite statutory relationship for a domestic violence charge.

Thus, even in the light most favorable to Rasmussen, the Court finds he does not make the requisite showing to survive summary judgment on his judicial deception claim. [4]

---

[4] The Court notes that it made this determination without considering the disputed facts of whether Rasmussen and/or Brittany stated that Rasmussen and Jacobsen were married, or that Brittany lived with Rasmussen since she was a baby. Nor did the Court consider facts offered by Hobbs to support a finding of probable cause that were obtained only after the filing of the instant lawsuit. *See Allen v. City of*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

### 2. Probable Cause [5]

"Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983." *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992). "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Once probable cause is established, an officer is under no duty to further investigate or look for additional evidence which may exculpate the accused. *See Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).

---

*Portland*, 73 F.3d 232, 236 (9th Cir. 1995)("Probable cause must be determined at the time the arrest is made.").

[5] Rasmussen conceded at oral argument that he was not arguing lack of probable cause for the charge of assault. Rather, he is only arguing that Hobbs did not have probable cause for the domestic aspect of the charge.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

Rasmussen claims that Hobbs determined there was probable cause based on only two heavily disputed facts, namely, that Hobbs was told (1) that Rasmussen was married to Brittany's mother and (2) that Brittany lived in Rasmussen's house since she was a baby. ECF No. 18 at 9. Rasmussen also disputes that he wore a wedding ring, and disputes that he was asked questions before he was arrested and denies that certain statements were made. However, as indicated in detail above, even assuming *arguendo* that Rasmussen and/or Brittany did not make the disputed statements to Hobbs, or that Rasmussen was not asked questions, sufficient evidence remains to support a finding of probable cause to arrest Rasmussen on a domestic violence offense. Most significantly, Brittany does not deny making repeated statements that Rasmussen was her "father" during her interview with Hobbs. Based on the statements made by Brittany that are not in genuine dispute, including: Rasmussen's presence at the altercation with Brittany, his presence at the residence he shared with Jacobsen, and his admission that he wore a ring on his ring finger; the Court finds that Rasmussen does not uphold his burden to show that triable issues of fact remain as to whether Hobbs had probable cause to arrest Rasmussen on the domestic violence charge.

### 3. Qualified Immunity

As Rasmussen correctly points out, the Ninth Circuit has held that governmental employees are not entitled to qualified immunity on judicial

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1  deception claims. *Chism*, 661 F.3d at 393. However, as indicated above, the Court
2  found that Rasmussen does not survive summary judgment on the judicial
3  deception claim. Therefore, the Court may proceed with a qualified immunity
4  analysis. The qualified immunity defense allows for mistaken judgments and
5  protects "all but the plainly incompetent or those who knowingly violate the law."
6  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). In order to analyze a claim of
7  qualified immunity, the court must determine whether, in the light most favorable
8  to the plaintiff, defendant's conduct violated a constitutional right, and whether the
9  right was clearly established at the time of the alleged misconduct. *See Saucier v.*
10 *Katz*, 533 U.S. 194, 201 (2001), *receded from in Pearson v. Callahan*, 555 U.S.
11 223, 236 (2009) (holding that it is within the sound discretion of the district court
12 to decide which of the two prongs should be addressed first). If the answer to
13 either of these questions is "no" then the officer cannot be held liable. *Glenn v.*
14 *Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).
15      As discussed in the previous section, the Court has found no genuine issue
16 of material fact exists as to whether Hobbs had probable cause to arrest Rasmussen
17 on the domestic violence charge. Further, even if the arrest was made without
18 probable cause, the Court finds Hobbs is still entitled to qualified immunity
19 because it was objectively reasonable for him to believe that he had probable
20 cause, despite the fact that he was ultimately mistaken as to the existence of a legal

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 18

relationship between Brittany and Rasmussen.  *See Rosenbaum*, 663 F.3d at 1078 ("the question in determining qualified immunity is whether all reasonable officers would agree that there was no probable cause in this instance.").  Thus, even in the light most favorable to Rasmussen, the Court finds Hobbs is entitled to qualified immunity.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Strike, ECF No. 25, is **DENIED**.

2. Defendants' Motion for Summary Judgment, ECF No. 9, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and a judgment accordingly, provide copies to counsel and CLOSE the file.

**DATED** March 21, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19